AO 106 (Rev. 04/10) Application for a Search Warrant

AJO

**SEALED**

## UNITED STATES DISTRICT COURT
### for the
#### Southern District of California

12/12/16
**UNSEALED PER ORDER OF COURT**

FILED

NOV 9 2016

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Google, Inc.
1600 Amphitheater Parkway, Mountain View CA 94043

)
)
)
)
)

Case No.

**'16 MJ 3478**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

see Attachment A

located in the _____ **Northern** _____ District of _____ **California** _____ , there is now concealed *(identify the person or describe the property to be seized):*

see Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1343, 1344 | Wire Fraud, Bank Fraud |

The application is based on these facts:

see Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kraig Palmer, Cross-Designated Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: *Nov. 9, 2016*

_____
*Judge's signature*

City and state: San Diego, California

Bernard G. Skomal, United States Magistrate Judge
*Printed name and title*



# AFFIDAVIT

I, Kraig Palmer, being duly sworn, state as follows:

# INTRODUCTION

## A.   Training and Experience

1.   I am an investigator with the California Highway Patrol ("CHP"), and have been employed as a peace officer with CHP since December 2009. I am currently assigned to the San Diego Regional Auto Theft Task Force ("RATT") and have been since May 2014, where I am cross-designated as a Federal Bureau of Investigation Agent.

2.   I attended and graduated the 2009 CHP academy where I received training in law enforcement functions including general investigations, vehicle theft investigations, narcotics enforcement, and officer safety issues.  I have attended and received over 500 hours of training outside of the CHP from the California Narcotics Association, the Western States Auto Theft Investigators Association ("WSATI"), among others.  I have also provided training in the areas of fraud, auto theft and organized criminal enterprises for the WSATI investigators conference, Arizona Gang Investigators Conference, and other law enforcement and private industry conferences.  I have also provided training to law enforcement and private industry personnel in the areas of fraud, auto theft, credit card/identity theft, credit card manufacturing, and organized criminal enterprises.

3.   I worked as an investigator for approximately one year in Los Angeles County as the CHP West Los Angeles felony investigator.  I was assigned as a plain

1

clothes investigator on the Orange County Auto Theft Task Force for approximately two years, before being assigned as an undercover operator/investigator on RATT.

4.     I have participated in over 500 auto theft investigations, some of which involved complex criminal enterprises conducting Vehicle Identification Number switching, illegal exportation, narcotics trafficking and other crimes.  I have also investigated cases involving kidnapping, attempted murder, chop shops, fraud, counterfeiting, conspiracy, narcotics trafficking, and other crimes.  As an undercover operator I have purchased stolen vehicles and narcotics.  I have authored over 50 search warrants, resulting in the prosecution of criminals and recovery of stolen property and evidence.  I have testified as an expert in the areas of rental vehicle operations, rental vehicle theft, and auto theft investigations in state court.

**B.     Purpose of this Affidavit**

5.     I make this affidavit in support of applications for search warrants for Google, Inc. and Yahoo!, Inc. as described in Attachment A, to search the email accounts **roberto.bleau@gmail.com** (the "Gmail account") and **roberto.bleau@yahoo.com** (the "Yahoo account") as described in Attachment B.  Based on the information below, I have probable cause to believe that Google's and Yahoo's servers and records will contain evidence, fruits, and instrumentalities of bank fraud (18 U.S.C. § 1344) and wire fraud (18 U.S.C. § 1343), as more fully described in Attachment B.

6.     All the conclusions and beliefs set forth in this affidavit are based on my training and experience, conversations with other agents who have training and experience in title washing investigations, and my knowledge of the facts of this investigation. This affidavit sets forth only the facts necessary to support the issuance of the requested search warrants; it does not include each and every fact known to me concerning this investigation.

## PROBABLE CAUSE

### A.     Background

7.     "Title washing" is a type of scheme in which vehicle titles are fraudulently altered to remove lienholders.  The effect of removing a lienholder from a title is that the person holding the "washed title" can then sell the vehicle to a third party without notifying or paying the lienholder – typically a bank or other lender who has provided a loan for the purchase of the vehicle.

8.     As detailed below, in April 2016, a Drug Enforcement Agency ("DEA") Confidential Source (CS)[1] told agents that Robert Childress ("Childress") was engaged in

---

[1] CS has provided reliable information that, in part, has been corroborated by physical surveillance, video surveillance, audio recorded conversations, text messages, and undercover interactions.  CS's primary motivation to cooperate is to obtain a lesser sentence associated with pending criminal charges involving the illegal distribution of steroids.  CS has a single criminal conviction for reckless driving and has not been compensated for providing assistance to law enforcement.

a title washing scheme. According to the CS, Childress told the CS that this scheme involved purchasing high-end vehicles by taking out auto loans and then selling the vehicles after washing their titles. Childress asked the CS for assistance in this scheme, specifically in obtaining washed titles and finding buyers for the vehicles.

9.     As further detailed below, beginning in September 2016, I – acting in an undercover capacity – contacted Childress. In recorded conversations and electronic communications, Childress explained to me that he intended to wash the titles and resell eight high-end vehicles that had recently been purchased in his girlfriend's name. Childress stated that he had a contact in Michigan who could create washed titles for these vehicles, but that he had previously been caught using this method. As such, he solicited me to wash the titles of the eight vehicles for him. As payment for doing so, Childress offered me one of the vehicles.

**B.  Childress and Diana Gomez Finance the Purchase of Eight High-End Vehicles**

10.     In conversations I had with Childress while acting in an undercover capacity, Childress claimed to be in a relationship with Diana Gomez ("Gomez"). Childress described her, at various times, as his "girlfriend," "girl," and "wife." According to loan applications and open source records that I have reviewed, Gomez is a schoolteacher at Bonita Vista Middle School in the Sweetwater Union High School District.

11.   California Department of Motor Vehicles ("DMV") records that I have reviewed show that Gomez is the registered owner of the eight vehicles listed below (collectively the "Vehicles").   These DMV records also include: (1) the Vehicle Identification Number ("VIN"); (2) the address of the registered owner; and (3) the lienholder.  I have also obtained the purchase agreements for all the Vehicles, which set forth the purchase date:

a.   2015 Land Rover
     VIN: SALGS2VF5FA230808
     Address: 1295 Keeler Court, San Diego, CA
     Lienholder: Huntington National Bank
     Purchase Date: February 26, 2016

b.   2016 Land Rover
     VIN: SALG2V68A809865
     Address: 1295 Keeler Court, San Diego, CA[2]
     Lienholder: JP Morgan Chase Bank
     Purchase Date: March 5, 2016

c.   2013 Mercedes AMG
     VIN: WDDJK7DA3DF018740
     Address: 1399 9th Ave, San Diego, CA
     Lienholder: Mercedes Benz FinServ USA LLC
     Purchase Date: March 14, 2016

d.   2016 Jeep Rubicon
     VIN: 1C4HJWFG4GL209158
     Address: 1399 9th Ave, #1420, San Diego, CA
     Lienholder: Chrysler Capital
     Purchase Date: March 30, 2016

---

[2] According to public records searches, 1295 Keeler Court is associated with Gomez's parents.

5

e.    2016 Jeep Rubicon
      VIN: 1C4HJWFG8GL212483
      Address: 1399 9th Ave, #1420, San Diego, CA
      Lienholder: Bank of America
      Purchase Date: March 30, 2016

f.    2016 Jeep Rubicon
      VIN: 1C4BJWFG1GL216459
      Address: 1399 9th Avenue, #1420, San Diego, CA
      Lienholder: First Technology FCU
      Purchase Date: March 30, 2016

g.    2016 Jeep Rubicon
      VIN: 1C4HJWFGXGL214932
      Address: 1399 9th Avenue, #1420, San Diego, CA
      Lienholder: U.S. Bank
      Purchase Date: April 1, 2016

h.    2016 Jeep Rubicon
      VIN: 1C4HJWFGXGL209455
      Address: 1399 9th Avenue, #1420, San Diego, CA
      Lienholder: SchoolsFirst FCU
      Purchase Date: April 11, 2016

12.    Based on my training and experience and the purchase dates listed above, I believe that the Vehicles were purchased through a "credit bust-out." In a credit bust-out, an individual uses credit to finance the purchase of many high-value items – like vehicles – within a short period of time. This is possible because individual credit reports are typically updated monthly – meaning that an individual can take out loans from multiple entities without the entities being aware of all the debts that the individual has recently incurred.

6

**C.**   **CS learns of Childress's Scheme to Engage in Title Washing**

13.   CS claims to have met Childress while CS worked as a guard at the CCA residential reentry facility located at 2727 Boston Avenue, San Diego, California, 92113.

14.   According to CS, while staying at the Boston Avenue facility, Childress told CS that he planned to obtain high-end vehicles by purchasing them on credit, washing the lienholder from the titles, and then selling the vehicles.  Childress also told CS that he knew an individual from Michigan who helped Childress obtain "clean" titles.

15.   CS met with Childress on April 5, 2016 – at the direction of law enforcement – to learn more about Childress's title washing scheme.  According to CS, Childress claimed to have four Jeep Rubicons, one Land Rover, one Range Rover, one Mercedes AMG, and one Jeep Cherokee.  Childress said that he had received complaints that he parked too many cars in the parking garage of his apartment complex in downtown San Diego.  Childress asked CS for help moving five cars from the complex's garage to a nearby warehouse.

16.   One week later, on April 12, 2016, CS again met with Childress.  According to CS, Childress asked CS to drive him to the Rancho Chrysler Jeep Dodge dealership located at 8010 Balboa Avenue, San Diego, where Childress picked up a 2016 Jeep Rubicon bearing VIN1C4HJWFG8GL212483.  The Jeep Rubicon was subsequently transported to a warehouse located at 4676 Brinell Street, San Diego.  According to CS,

while at the Rancho dealership, Childress filled out loan paperwork to purchase two more vehicles.

17.    According to CS, later that day, CS helped Childress transport two more Jeep Rubicons to the Brinell Street warehouse.  Agents subsequently confirmed via surveillance that three Jeep Rubicons were parked at the warehouse.

**D.    September 12, 2016 - Initial Undercover Interactions**

18.    On September 12, 2016, acting in an undercover capacity, I met with Childress, CS, and another undercover officer in the parking lot of the Starbucks located at 2556 Laning Road in San Diego.  I recorded the meeting using an electronic recording device.  After arriving at the Starbucks, I observed Childress and the CS arrive in a 2016 Land Rover, which I later determined to be one of the Vehicles.

19.    The following took place at the meeting:

a.    I informed Childress that I had a connection with the DMV who could assist in removing the lienholder from the titles of the Vehicles, which would allow Childress to sell the vehicles without notifying or paying the lienholder.  I asked Childress how long he would wait before he stopped making payments to the lienholder.  Childress then began making comments that suggested he wanted to sell the cars legally.

b.    I asked Childress whether he had titles for the Vehicles I claimed to be interested in buying.  Childress showed me digital photographs on his cell phone of eight vehicle titles, which photographs he later sent me via text message.  The vehicle titles in

8

the photographs were arranged in a way that covered the bottom quarter of the titles and obscured the lienholders' information. Based on my training and experience, I know that when an individual finances the purchase of a vehicle in California, the DMV does not issue a title to the registered owner. I also know that the vehicle's registered owner cannot legally obtain the vehicle's title until the lien has been fully satisfied.

   c. Later in the conversation, Childress said that he knew an individual in Michigan who could remove the lienholder on a vehicle title by transferring the vehicle between several car dealerships. I told Childress that I knew an employee of the California DMV who could produce titles without lienholder information. Childress seemed excited at the prospect of being able to remove lienholder information from California titles. Childress then said that the way he obtained the titles for the Vehicles was "shady," but not illegal. During the interaction, Childress and I exchanged telephone numbers so that we could continue to communicate.

   d. Based on my training and experience, which includes over 100 undercover interactions, I know that individuals engaged in criminal activity will often withhold incriminating information or misrepresent their intentions upon first meeting an unknown individual. I believe that Childress initially concealed his desire to sell the Vehicles illegally in order to first determine whether he trusted me.

20.   Several hours after our meeting at Starbucks, Childress sent me a text message asking me to call him. I immediately called Childress and recorded our conversation.

21.   Based on the recording and my recollection, the following took place during our telephone conversation:

a.   Childress told me that he wanted to sell five Jeep Rubicons, a Mercedes Benz, and another Range Rover (in addition to the one he drove to our meeting earlier that day). Childress later told me that he would give me a 2016 Jeep Rubicon if I got "all the title work done." Based on my training and experience and our prior conversation at Starbucks, I understood the phrase "title work" to mean "washing the title," that is, removing the lienholder from a vehicle title. I then asked Childress, "I get the 2016 [Jeep] and I wash the lien off of it, it's fucking gone?" Childress responded, "right."

b.   Later in the conversation, I again claimed to know a DMV employee who could wash the lienholder off a title without the lienholder's knowledge. Childress expressed interest in washing the titles in a way that would remove the lienholder and change the name of the registered owner. Childress then explained that he wanted to wash the titles that way "because I had an issue like that one time where the motherfuckers started to check only because the car was so new and the dealership got kind of suspicious and shit and was like, you know, thinking like, like, you know, something was up and they

checked because you know they ran the title and shit and they seen there was a lien on it." Childress went on to say, "you get certain people that's really fucking nosey and they just want to be in other people's business those motherfuckers you want to strangle to death, you want to strangle the fucking life out of them, like you fucking bitch, shut your bitch ass mouth."

**E.    September 22, 2016 - Childress Provides Fraudulent Titles**

22.    On September 22, 2016, I had scheduled to meet Childress for breakfast so that he could provide me titles for two of the Vehicles.  Childress provided these titles with the expectation that they would be used by the DMV contact to create washed Arizona titles as described above.  At approximately 9:40 a.m., I called Childress to provide him the address of the location where we were going to meet.  Later than morning, Childress said that he would not be able to make it to the restaurant, and asked if I could come to his apartment.  Childress told me that he lived at the AVA Cortez Hill apartment complex.

23.    Childress said that he had the titles at the apartment, and that I could come up to retrieve them.  Childress and I ultimately decided to meet later that day at a Starbucks located in Point Loma.

24.    Later that morning, I met with Childress in the parking lot of the Starbucks located at 2556 Laning Road, San Diego, California.  I recorded the meeting using an electronic recording device.

11

25.   Based on the recording and my recollection, the following took place during the meeting:

a.   At the beginning of our meeting, Childress provided me with a United States Postal Service "Priority Mail" envelope that had been previously opened.   The envelope contained California titles for two of the Vehicles.   The recipient's address listed on the envelope was:

> Robert Childress
> 1399 Ninth Ave Apt 1420
> San Diego, CA 92101

b.   I told Childress that my connection at the California DMV was prepared to wash the titles of the Vehicles and would obtain Arizona titles without the lienholders and with the name of a new registered owner.   I also told Childress that my connection needed to know the name of the individual or entity that would be the new registered owner on the titles.   Childress said that he would put the titles in the name of his business.   I provided Childress with a blank Arizona Department of Transportation Bill of Sale and asked that he complete the form with the information that he would want on the new titles.   Childress listed his business as "Exoticar International Auto Sales" with the address "P.O. Box 122102, San Diego, California."   Childress also listed his birthdate as January 18, 1971 and signed the form.   Based on a criminal history report that I reviewed, Childress's birthdate is January 18, 1971.

c.      In an apparent reference to a prior conviction for title washing in Michigan, Childress stated that he was caught, in that case, because the titles were washed using fraudulent documents indicating that the lien had been satisfied.  Childress then suggested he preferred not to use false lien satisfaction documents as that could later be discovered by law enforcement.  To summarize our plan, I told Childress that, according to my California DMV connection, "when it's all done, the title will be, like, washed and clean, and there will be no record of nothing with the lien on it.  And then, you know, like you said, sell it off and make the money, and then, you know, we'll talk other business."  Childress then agreed that this was the plan.

26.     After our meeting, I inspected the two titles that Childress provided me and made the following observations, which are based on my review of the titles and my training and experience:

a.      I reviewed the title for the 2016 Land Rover (one of the Vehicles) first, and verified that the title was printed on genuine DMV paper.  While reviewing the document, I made several observations that indicated the title had been washed.  First, in the bottom right hand corner of the document, the serial number's ink was inconsistently faded, indicating that someone had used chemicals to remove some of the information originally printed on the title by the DMV.  Second, a portion of the title's sequence number was printed on top of the serial number.  Finally, many of the items of information on the title were printed at a slight angle, including the name of the registered owner, the

13

name of the lien holder, the issue date, and the license plate number, among others. Based on my training and experience, it is unlikely to see these occurrences on genuine DMV-issued titles, and even less likely to see all three occurrences on a genuine title. Based on the above, there is probable cause to believe that the title that Childress gave me for the 2016 Land Rover was fraudulent.

   b.  I next reviewed the title for a 2016 Jeep Rubicon (one of the Vehicles) and verified that the title was printed on genuine DMV paper. While reviewing the document, I made several observations that indicated the title had been washed. First, the upper right corner of the title features a box where the vehicle's license plate should be printed. I noticed that over half of the first number of the license plate was not printed within the box. Second, the ink across the top portion of the title was chipping and unevenly faded. Finally, in the bottom right hand corner of the document, the serial number's ink was inconsistently faded, indicating that someone had used chemicals to remove some of the information originally printed on the title by the DMV.

   c.  Based on my training and experience, it is unlikely to see these occurrences on genuine DMV-issued titles, and even less likely to see all three occurrences on a genuine title. Based on the above, there is probable cause to believe that the titles that Childress gave me for these vehicles were fraudulent.

14

27.     Later that day, at approximately 6:09 p.m., I placed a recorded telephone call to Childress.  Based on the recording and my recollection, the following took place during our telephone conversation:

a.      I told Childress that my DMV connection was impressed with the two titles that he had given me earlier that day.  I asked Childress how much he had paid for the titles.  Childress said that he had paid between three and four thousand dollars for each title.  Childress further explained that he could not remember the precise cost because he purchased around ten titles in a package deal.  I told Childress that I had instructed my DMV connection not to use lien satisfaction paperwork per Childress' request.  Childress responded, "right, exactly . . . any other way, other than attaching any type of fraudulent documents.  Because all of that shit is in my name and in my girl's name, you know what I'm saying, my wife dude."

**F.     September 25, 2016 - Undercover Conversation**

28.     On September 25, 2016 at approximately 8:30 p.m., I placed a recorded telephone call to Childress.  The following took place during our telephone conversation:

a.      During the conversation, Childress and I reiterated our plan to remove the lienholders from the Vehicles' titles and register them in the name of Childress's business.  Childress stated that if my DMV connection could not wash the titles, he knew someone in Texas who could wash the titles of seven vehicles for $7,000.

15

b.     Childress and I then arranged to meet on October 4, 2016.  Childress believed that at this meeting I would provide him with the washed titles received from my DMV connection.

## G.     Arrest, Search Warrant and Indictment

29.     On October 4, 2016, I met Childress in Chula Vista, California.  At that meeting, agents arrested Childress pursuant to an arrest warrant issued by United States Magistrate Judge Louisa Porter.  At the time he was arrested, Childress had a large key ring in his pocket that contained keys for each of the eight Vehicles.

30.     After the arrest, agents executed a search warrant at Childress's residence at the AVA Cortez Hill apartment complex.  During the search, agents seized, among other things, purchase agreements for the Vehicles, fraudulent titles for the Vehicles, bank documents, a cell phone, and a laptop computer.

31.     During the search, agents also discovered evidence that Childress obtained or attempted to purchase additional luxury vehicles, including a Maserati, a Rolls Royce, an Aston Martin, and a Bentley Continental.  According to documents provided by car dealerships that I reviewed, Childress attempted to establish his creditworthiness to obtain financing for other vehicles by providing documents that misrepresented his occupation, income, and assets.

32.     On November 2, 2016, a federal grand jury returned an indictment charging Childress with eight counts of wire fraud in violation of 18 U.S.C. § 1343.

## PROBABLE CAUSE THAT EVIDENCE IS LOCATED IN THE SUBJECT ACCOUNTS

33.     A review of Childress's cell phone – searched pursuant to a warrant signed by Judge Porter – reveals that Childress uses the alias "Roberto Bleau." In numerous text messages and emails that I reviewed on Childress's cell phone, Childress refers to himself as "Roberto" and "Roberto Bleau." I also reviewed what appears to be an Instagram profile page on Childress's cell phone featuring Childress's image next to the name "Roberto Beau Bleau." The profile lists the phone number 619-552-6140, which is Childress's cell phone number, based on my review of Childress's phone and loan documents. Finally, on November 3, 2016, I accessed an open source website featuring a Facebook profile with Childress's image belonging to the user "Roberto Bleau."

34.     Evidence in Childress's cell phone establishes that Childress controls the Yahoo account—roberto.bleau@yahoo.com. According to text messages on Childress's cell phone, Childress and a real estate agent named Gretchen Cabrera exchanged text messages on October 3, 2016 regarding a property Childress was interested in purchasing. When Cabrera asked Childress for his email address, Childress responded "roberto.bleau@yahoo.com." During my review of Childress's cell phone, I saw numerous emails from Childress using the Yahoo account.

35.     Childress has used the Yahoo account to perpetuate his fraudulent scheme. On February 23, 2016, Childress used the Yahoo account to send an email to a sales

representative at Hoehn Motors.  The subject of the email was "PROOF WE'RE NOT POOR" and the body of the email stated "My fiancée is offended."  Attached to the email, was a letter from DLJ Financial, Inc., stating that "Robert Lee Childress, Jr., and Diana Gomez have been preapproved for financing the purchase of the residence at 6911 Neptune Pl in La Jolla, CA 92037.  The approved purchase price is up to $4,750,000.  Mr. Childress and Mrs. Gomez have sufficient assets for at least 40% down payment and has [sic] been qualified to finance the remaining balance."

36.    Based on my training and experience, I believe that Childress sent the letter to the sales representative from Hoehn Motors in an attempt to obtain financing to purchase a vehicle.  Indeed, according to a contract between Gomez and Hoehn Motors, approximately two weeks after Childress sent the letter using the Yahoo account, Gomez purchased a 2016 Land Rover from Hoehn Motors on March 5, 2016 with $63,000 in financing.

37.    According to an email dated September 15, 2016 that I viewed on Childress's cell phone, Childress, using the alias "Roberto Bleau," communicated with Lourin Almhana of Coast to Coast Auto Sales using the Yahoo account.  Almhana wrote:

> I understand that the bank is calling you, and we are waiting on your cooperation to finish your title work for you, we will not be able to send the title directly [sic] you. Huntington will not allow us to send the title directly to you, unless the car is completely paid off.

18

38.     According to a purchase contract, Gomez purchased a 2015 Land Rover (one of the Vehicles) from Coast to Coast Auto Sales on February 26, 2016, and financed the purchased with a loan from The Huntington National Bank.  Based on my training and experience and the information above, I believe that Childress's email to Almhana was an attempt to obtain a title from Coast to Coast Auto Sales for the 2015 Land Rover without first satisfying Huntington National Bank's lien.

39.     Based on my training and experience, individuals involved in title washing scenarios often use email to communicate with dealerships, finance companies, potential buyers, and individuals engaged in washing the titles.   Moreover, based on my training and experience, I know individuals involved in title washing scenarios rely heavily on electronic communications and resources to be able to complete their title washing operation and maintain these communications in their email accounts.  Because Childress used the Yahoo account to obtain financing and titles for the Vehicles, there is probable cause to conclude that Childress used the Yahoo account in committing a crime and that the Yahoo account will contain evidence of that crime.

40.     Childress has also used the Gmail account to perpetuate his fraudulent scheme. On November 4, 2016, I accessed an open source website and viewed the preview of three advertisements where it appears Childress was trying to sell at least one of the Vehicles.  I was unable to access the full advertisement on the host website given that the advertisements were no longer available.

a.   The first advertisement, on www.autoquid.com, advertised a "2016 Jeep Rubicon Hard Rock Edition Blk/blk Fully Loaded."  Three of the eight Vehicles that Gomez purchased match that description.  The portion of the advertisement that I could read said "This price to the public is below auction prices.  Call Roberto at 619 552 6140 or email at roberto.bleau@gmail.com."  As set forth in paragraph 32, 619-552-6140 is Childress's cell phone number.

b.   The second advertisement, on www.carsale-ads.com, advertised a "Jeep Wrangler Rubicon Hard Rock Edition (2016)."  Five of the eight Vehicles that Gomez purchased match that description.  The portion of the advertisement that I could read said "This price to the public is below auction prices.  Call Roberto at 619 552 6140 or email at roberto.bleau@gmail.com."

c.   The third advertisement, on www.usedcarsfsbo.com, advertised a "Used Jeep."  Five of the eight Vehicles that Gomez purchased match that description.  The portion of the advertisement that I could read said "Call Roberto at 619 552 6140 or email at roberto.bleau@gmail.com, Fixed Price $41,700."

41.   Based on my training and experience, individuals involved in title washing scenarios often use email to communicate with dealerships, finance companies, potential buyers, and other individuals engaged in washing the titles.   Moreover, based on my training and experience, I know individuals involved in title washing scenarios rely heavily on electronic communications and resources to be able to complete their title

washing operation and maintain these communications in their email accounts. Because Childress used the Gmail account to communicate with potential buyers, there is probable cause to conclude that Childress used the Gmail account in committing a crime and that the Gmail account will contain evidence of that crime.

## YAHOO AND GOOGLE

42.     Yahoo!, Inc. and Google, Inc. (the "Internet Service Providers" or "ISPs") among other things, provide electronic communication services to their subscribers. The ISPs' electronic mail service allows their subscribers to exchange electronic communications with others through the Internet. Subscribers access services through the Internet.

43.     Subscribers to the ISPs use screen names during communications with others. The screen names may or may not identify the real name of the person using a particular screen name. Although the ISPs require users to subscribe for an account, the ISPs do not verify the information provided by the subscriber for their free services.

44.     At the creation of an account and for each subsequent access to the account, the ISPs log the Internet Protocol ("IP") address of the computer accessing the account. An IP address is a unique address through which a computer connects to the Internet. IP addresses are leased to businesses and individuals. Obtaining the IP addresses that have accessed a particular ISP account often identifies the ISP that owns and has leased that

21

address to its customer.  Subscriber information for that customer then can be obtained using appropriate legal process.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

45.     Federal  agents  and  investigative  support  personnel  are  trained  and experienced  in  identifying  communications  relevant  to  the  crimes  under  investigation. The personnel of the ISPs are not.   It would be inappropriate and impractical for federal agents to search the vast computer network of the ISPs for the relevant accounts and then to analyze the contents of those accounts on the premises of the ISPs.  The disruption to the ISPs' business would be severe.

46.     Therefore, I request authority to seize all content from the ISPs' accounts, as described in Attachment B.  In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of the ISPs, to protect the privacy of ISP subscribers whose accounts are not authorized to be searched, and to effectively pursue this investigation, FBI seeks authorization to allow the ISPs to make a digital copy of the entire contents of the account subject to seizure.  That copy will be provided to me or to any authorized federal agent.  The copy will be imaged and the image will then be analyzed to identify communications and other electronic records subject to seizure pursuant to Attachment B.  Relevant electronic records will be copied to separate media.  The original media will be sealed and maintained to establish authenticity, if necessary.

47.     Analyzing the data to be provided by the ISPs may require special technical skills, equipment, and software.   It may also be very time-consuming.   Searching by keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Keyword searches do not capture misspelled words, reveal the use of coded language, or account for slang.   Keyword searches are further limited when electronic records are in or use foreign languages.   Certain file formats also do not lend themselves to keyword searches. Keywords search text.   Many common electronic mail, database and spreadsheet applications, which files may have been attached to electronic mail, do not store data as searchable text.   Instead, such data is saved in a proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically.   The ISPs do not always organize the electronic files they provide chronologically, which makes review even more time consuming and may also require the examiner to review each page or record for responsive material.

48.     Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months.   Keywords need to be modified continuously based upon the results obtained and, depending on the organization, format, and language of the

23

records provided by the ISP, examiners may need to review each record to determine if it is responsive to Attachment B. The personnel conducting the examination will complete the analysis within ninety (90) days of receipt of the data from the service provider, absent further application to this Court.

49.    Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic mails that identify any users of the subject account(s) and any electronic mails sent or received in temporal proximity to incriminating electronic mails that provide context to the incriminating mails.

50.    All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

## REQUEST FOR SEALING AND PRECLUSION OF NOTICE

51.    This is an ongoing investigation. It is very likely, based upon the above, that evidence of the crimes under investigation exists on computers and elsewhere subject to the control of the target or target's confederates. While the target is aware of the investigation, there is reason to believe, based on the above, that premature disclosure of the existence of the warrant will result in destruction or tampering with that evidence and seriously jeopardize the success of the investigation. Accordingly, it is requested that this warrant and its related materials be sealed until further order of the Court. In addition, pursuant to Title 18, United States Code, Section 2705(b), it is requested that this Court

order the electronic service provider to whom this warrant is directed not to notify anyone of the existence of this warrant, other than its personnel essential to compliance with the execution of this warrant, until May 9, 2017, absent further order of the court.

## CONCLUSION

52.　Based on the foregoing, there is probable cause to believe that Childress is engaged in violations of criminal law, namely bank fraud (18 U.S.C. § 1344) and wire fraud (18 U.S.C. § 1343).

53.　I also conclude that there is probable cause to believe that the items to be seized in Attachment B will be found in the email account as described in Attachment A.

Respectfully submitted,

Kraig Palmer
Cross Designated Agent, FBI

Subscribed and sworn to before me on November **9** , 2016

Hon. Bernard G. Skomal
United States Magistrate Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTACHMENT A

Google, Inc. is an Internet Service Provider with its primary computer information systems and other electronic communications and storage systems, records and data located at 1600 Amphitheater Parkway, Mountain View, California 94043.

# ATTACHMENT B

## I.    Service of Warrant

The officer executing the warrant shall permit Google, as custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

## II.   Items Subject to Seizure

All subscriber and/or user information, all electronic mail, images, text messages, histories, buddy or friend lists, profiles, method of payment, detailed billing records, access logs, transactional data and any other files or records associated with the following accounts:

roberto.bleau@gmail.com

## III.  Search and Seizure of Data by Law Enforcement

Law enforcement shall conduct any search of the data pursuant to the "Procedures For Electronically Stored Information" of the affidavit submitted in support of this search warrant and will be limited to the period of January 1, 2016 to the date of the issuance of this warrant and to the seizure of:

a.   Communications, records, and attachments tending to discuss or establish the purchase or sale of vehicles, vehicle leasing, ownership of vehicles, or location of vehicles.

b.   Communications, records, and attachments tending to discuss applications for credit, credit history, creditworthiness, or payment or service of credit or loan balances.

c.   Communications, records, and attachments tending to discuss vehicle titles;

d.   Communications, records, and attachments tending to identify Robert Childress, Diana Gomez, or any co-conspirators involved in the activities in III(a-? above; which constitute evidence of violations of bank fraud (18 U.S.C. § 1344) and mail fraud (18 U.S.C. § 1343) committed by Robert Childress, Diana Gomez, or others.